# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.                          ) | CR422-151 |
| ) | |
| CEDRIC DEMON ROBINSON,      ) | |
| ) | |
| Defendant.                  ) | |

## ORDER

Defendant Cedric Demon Robinson is charged with one count of aggravated sexual abuse of a child and one count of attempted production of visual depictions of minors engaging in sexually explicit conduct by a parent or guardian. *See* doc. 1 (Indictment). Trial is currently set to commence on April 22, 2025. *See* doc. 120. Currently before the Court are two motions *in limine*. *See* docs. 130 & 133. First, the Government moves for a determination that certain evidence is conditionally admissible pursuant to the residual hearsay exception in Federal Rule of Evidence 807. *See generally* doc. 130. Second, Defendant seeks to exclude statements he made during an interview with state law enforcement in Mississippi. *See generally* doc. 133. On April 11, 2025,

the Court held a hearing on both motions. *See* doc. 166; *see also* Fed. R. Evid. 104(a); *Jackson v. Denno*, 378 U.S. 368 (1964).[1]

"Courts use the term 'motion in limine' to refer to a motion to exclude or admit anticipated evidence before the evidence is actually offered." *Bryan v. City of Orlando*, 2024 WL 4664347, at *1 (M.D. Fla. Nov. 4, 2024) (internal quotation marks and citations omitted). Motions *in limine* often seek a prophylactic against the introduction of damaging evidence that could "'irretrievably affect the fairness of the trial.'" *Benson v. Facemyer*, 2017 WL 1400558, at *1 (N.D. Ga. April 19, 2017) (quoting *Soto v. Geico Indem. Co.*, 2014 WL 3644247 at *1 (M.D. Fla. July 21, 2014)). Courts grant them "'only if the evidence in question is clearly inadmissible.'" *Hamilton v. Lanier*, 464 F. Supp. 3d 1379, 1381 (S.D. Ga. 2020) (quoting *Stewart v. Hooters of Am., Inc.*, 2007 WL 1752873, at *1 (M.D. Fla. Jun. 18, 2007)); *see also Benson*, 2017 WL 1400558, at *1 (quoting *Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350, 1359

---

[1] The Government's Motion, doc. 130, and a portion of the April 11 hearing, *see* doc. 166, are sealed to protect facts that might identify MV3. In the interest of ensuring that no more material is sealed than is absolutely necessary, the Court has avoided any fact that might identify MV3 in this Order. Accordingly, it will be filed on the public docket. *Cf. United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1028-29 (11th Cir. 2005) (discussing the "indispensable" importance of public access to criminal proceedings).

(N.D. Ga. 2009)). Even where an order affirmatively admitting evidence can be entered, they are "always preliminary and conditioned on what the evidence shows at trial." *Rosenfeld v. Oceania Cruises, Inc.*, 682 F.3d 1320, 1325 (11th Cir. 2012) (Tjoflat, J dissenting from denial of reh'g en banc).

Both of the pending motions concern evidence related to allegations that Defendant committed additional acts of sexual abuse of a child, identified as "MV3," while he was released on bond after his indictment in this case. *See* doc. 114 at 2-3. The Court previously determined that evidence concerning those allegations was admissible pursuant to Federal Rules of Evidence 404(b), 413, and 414. *See id.* at 10. In making that determination, however, the Court deferred consideration of challenges to the admissibility of specific evidence. *Id.* Both of the pending motions raise issues of the admissibility of specific evidence of the alleged sexual abuse.

### I.   Forensic Interview Recording (Doc. 130)

The Government moves "to allow admission of [MV3's] prior statements to a forensic interviewer." Doc. 130. Despite the affirmative nature of the Government's request, its Motion makes clear that it is, in

3

fact, conditional. *See id.* at 3. It "anticipates two situations that may arise in which MV3's prior statements to the forensic interviewer would be admissible." *Id.* First, the Government suggests that the prior statements would be admissible under the Federal Rules of Evidence's residual hearsay exception, "if MV3 becomes so anxious or intimidated that she is unable or unwilling to testify fully . . . ." *Id.* (citing Fed. R. Evid. 807). Second, if Defendant challenges MV3's credibility on cross-examination, the Government argues that the statements would be admissible as prior consistent statements under Federal Rule of Evidence 801(d)(1)(B)(ii). Defendant points out that, depending upon the nature and extent of MV3's inability or unwillingness to testify, the forensic interview's admissibility might be affected, either partly or wholly. *See* doc. 140 at 2-3. Defendant also points out that the statements would only be admissible as prior consistent statements if MV3 provides inconsistent testimony on cross-examination and the cross-examination challenges her memory and credibility. *Id.* at 3.

As to the Government's first theory of admissibility, Defendant is correct that the Court cannot fully anticipate the circumstances of MV3's hypothetical incapacity or refusal to testify. As Defendant acknowledges,

4

albeit somewhat implicitly, there is an obvious circumstance in which the recorded interview might be proffered under the residual hearsay exception; "if [MV3] is unable or unwilling to testify to a 'material issue' regarding the abuse, then the entire interview becomes admissible," doc. 140 at 2-3, subject to the other requirements of the Rule 807. To the extent, therefore, that the Government sought an affirmative determination of the admissibility of the entirety of the video recording, its Motion must be **DENIED, without prejudice**. Doc. 130. Although the Court cannot determine, positively, that the recording will be admissible, it can address the parties' dispute about whether the recording constitutes hearsay, which would be inadmissible for any purpose and under any circumstances.[2] There is no dispute that the recording is hearsay. *See, e.g.,* Fed. R. Evid. 801(c).

The Federal Rules of Evidence allow admission of hearsay, not otherwise admissible under the exceptions enumerated in Rules 803 and 804, subject to several conditions. First, admission under the so-called

---

[2] In undertaking this analysis, the Court construes the portion of Defendant's response to the Government's Rule 807 notice which challenges the admissibility of the recording's admissibility under that Rule's exception to the exclusion of hearsay as, itself, a Motion *in limine* to exclude the recording. *See* doc. 140 at 3-4.

5

"residual exception," generally requires that the proponent provide "reasonable notice," in writing before the proceeding where the statement is offered. *See* Fed. R. Evid. 807(b). There is no dispute that the Government has provided sufficient notice. *See, e.g.,* doc. 130 at 1. In addition to notice, Rule 807 requires that the proponent show that (1) "the statement is supported by sufficient guarantees of trustworthiness"; and (2) that "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(1)-(2). The Eleventh Circuit has recognized that "Congress intended the residual hearsay exception to be used very rarely, and only in exceptional circumstances." *Rivers v. United States*, 777 F.3d 1306, 1312 (11th Cir. 2015) (internal quotation marks and citation omitted). Given the hypothetical character of the Government's proffer, the Court will first address the limited extent to which the probative value of the recording can be discerned and, then, address whether the Government has identified sufficient "guarantees of trustworthiness" for its admission under the residual exception.

The United States District Court for the Northern District of Florida, in *United States v. McCaffrey*, has recently discussed the

admission of a recording of a forensic interview of a minor victim of sexual abuse, and recognized that "[c]ourts have employed the residual hearsay exception most extensively in admitting statements made by child witnesses, particularly in sexual abuse cases." 2024 WL 3362285, at *4 (N.D. Fla. July 10, 2024) (internal quotation marks, citation, and alteration omitted). The United States Court of Appeals for the Eighth Circuit has explained that "a child's in-court statements are generally more probative than a child's out-of-court statements," but "when a child is unable or unwilling to testify in a courtroom setting, a child's out-of-court statements may be the most probative evidence on an issue." *United States v. W.B.*, 452 F.3d 1002, 1005-06 (8th Cir. 2006). To the extent that Defendant seeks to exclude the recording as inadmissible hearsay, the Government's articulated statement of its possible probative value, discussed above, is sufficient to show that it is not clearly inadmissible. *See, e.g., Hamilton*, 464 F. Supp. 3d at 1381.

*McCaffrey* also explains that "[s]everal courts have discussed the circumstances courts should consider when assessing the trustworthiness of out-of-court statements by children about sexual abuse." 2024 WL 3362285, at *5. The balance of persuasive authority

7

establishes that the court should consider: "the training and experience of the interviewer; whether the child was interviewed using open-ended questions; the age of the child and whether the child used age-appropriate language in discussing the abuse; the length of time between the incident of abuse and the making of the hearsay statement; and whether the child repeated the same facts consistently to adults." *Id.* (quoting *United States v. Thunder Horse*, 370 F.3d 745, 748 (8th Cir. 2004)) (internal quotation marks omitted); *see also United States v. McFadden*, 116 F.4th 1069, 1082 (10th Cir. 2024) ("In child-sex-abuse cases, there are various factors that courts consider in deciding whether a child victim's hearsay statement is admissible under Rule 807. [Cit.] These include spontaneity, consistency between repeated allegations, mental state of the child, use of age-appropriate terminology, and lack of motive to fabricate. [Cit.] . . . A totality [of the circumstances] analysis might implicate the training and expertise of the interviewer, the interviewer's use of open-ended rather than leading questions, the time between the alleged abuse and the hearsay statements, and the declarant child's age." (citations omitted)).

First, the forensic interviewer's training and experience weigh heavily in favor of the recorded interview's trustworthiness. The Government's Motion and supporting exhibits establish that the interviewer has extensive qualifications and experience as a forensic interviewer of child victims of sexual abuse. *See* doc. 130 at 5; *see also* doc. 130-1. Her declaration establishes that she has been certified as a child forensic interviewer since 2018, was employed in that capacity from 2018 until 2024, and conducted approximately 500 such interviews during her employment. *See* doc. 130-1 at 1. Her employment also included annual peer review of her interview techniques. *Id*. Finally, neither Defendant's response, doc. 140, nor his presentation at the April 11 hearing challenge the interviewer's qualifications or experience.

Second, the conduct of the interview weighs in favor of its trustworthiness, albeit less strongly. At the hearing, Defendant offered expert testimony from Dr. James Powell concerning the protocol, techniques, and recording of the interview. He identified several ways in which he contended that the interview might have been improved. Specifically, he testified that, although the protocol used was "common," he believed that it had been undermined by other research. He noted

that the protocol introduced anatomically correct drawings early in the interview and omitted any discussion of the concept of "truth" at issue. As to the conduct of the interview, as distinct from the protocol applied, he noted that the questions posed to MV3, while not leading, did not give her an opportunity to contradict herself, did not inquire into any basis for her understanding of sexual behavior, and did not sufficiently probe the nature and quality of her relationship with the Defendant. As to the recording, Dr. Powell noted that the interviewer's face is not visible, so information concerning non-verbal communication, including potential prompting, is lost. On cross-examination, Dr. Powell conceded that he observed "very little leading," and, despite his methodological disputes, the techniques applied were professionally acceptable. While the Court found Dr. Powell credible and, in the absence of any countervailing expert testimony, accepts his reservations concerning the interview, nothing in his testimony supports the conclusion that, as a whole, it was not trustworthy.

Third, MV3's age and her use of age-appropriate language weigh in favor of the interview's trustworthiness. Dr. Powell testified that, although he believed additional questions establishing MV3's cognitive

level might have improved the quality of the interview, he agreed that her responses were within the expected range. During the sealed portion of the hearing, the Government referred to a specific instance in the interview when MV3 displayed uncertainty concerning a particular sexual function and provided an age-appropriate analogous description. Given the lack of any countervailing circumstances, the Court concludes that MV3's age and her use of age-appropriate language weigh in favor of the trustworthiness of the interview.

Fourth, MV3's general credibility, including the duration between the alleged abuse and the interview, whether she had previously reported the abuse, whether she had any motivation to fabricate her allegations, and whether her allegations were corroborated, weighs in favor of the interview's trustworthiness. The fact that the interview was conducted approximately two weeks after the alleged abuse supports its trustworthiness. As Dr. Powell conceded, such a brief duration would create no significant "memory lag." Moreover, the Government points to evidence that MV3 had previously reported the alleged abuse to multiple other adults. *See* doc. 130 at 6; *see also* doc. 130-2. Although, Dr. Powell identified a potential basis for MV3's bias that was not fully explored in

the interview, the Government pointed out that the alleged bias would, plausibly, lead MV3 to minimize or conceal the alleged abuse. Finally, the Government pointed to at least one wholly independent fact which corroborates MV3's statements. The facts supporting MV3's credibility, therefore, also weigh in favor of the interview's trustworthiness.

In summary, after considering the totality of the circumstances, the Court finds that the Government has shown that the video recording possesses "sufficient guarantees of trustworthiness" that it cannot be excluded, pursuant to Rule 807. Accordingly, Defendant's constructive Motion seeking to exclude the recording as inadmissible hearsay is **DENIED**. Doc. 140. The Court finds that, although the recording constitutes hearsay, it is nevertheless potentially admissible under the residual exception established in Federal Rule of Evidence 807.

*McCaffrey* also considered a virtually identical motion *in limine* to admit a video recording of a forensic interview of a minor victim of sexual abuse as a "prior consistent statement," under Rule 801(d)(1)(B)(ii). *See* 2024 WL 3362285, at *10. The court observed that the Rule permits admission of a witness's prior statement "if the declarant testifies and is subject to cross-examination about a prior statement and the statement

is consistent with the declarant's testimony and is offered to rehabilitate the declarant's credibility as a witness when attacked on another ground." *Id.* (quoting Fed. R. Evid. 801(d)(1)(B)(ii)) (internal quotation marks and alterations omitted). To the extent that the Government seeks a determination that the statements in the video are all admissible as prior consistent statements, the Court, obviously, cannot make such a determination. Accordingly, it's Motion to admit the video under Rule 801(d)(1)(B)(ii) must be **DENIED**. Doc. 130. However, Defendant also cannot exclude the statements' admission for such a purpose. Any constructive Motion is also, therefore, **DENIED**. Doc. 140. As *McCaffrey* observed, if, at trial, Defendant "attacks [MV3's] testimony[, a]t that point, the [District Judge] will decide whether[, and which,] prior statements the Government wishes to introduce are consistent with [MV3's] testimony and offered for a proper purpose." 2024 WL 3362285, at *10.

## II. Defendant's Interview Recording (Doc. 133)

Defendant's Motion explains that the Government seeks to introduce statements that he made during the course of an interview with an officer of the Lafayette County Police, investigating the

allegations of Defendant's abuse of MV3. *See* doc. 133 at 1-2. The Motion argues, somewhat vaguely, that the statements should be excluded because they were made outside the presence of his counsel in this case and, although he nominally waived his rights, he "may have not had the requisite mental capacity to intelligently and voluntarily wave his *Miranda* rights." *Id.* at 2. The Government's response, which remains under seal to protect information concerning the identity of MV3, argues that Defendant did not have any right to the presence of his current counsel in an interview with the agents of a separate sovereign, *i.e.* the State of Mississippi, investigating a separate offense. *See* doc. 151 at 4-5. As to the effectiveness of Defendant's waiver, the Government points out that he has been determined competent in these proceedings and a video recording of the interview itself supports the conclusion that his waiver was knowing and voluntary. *Id.* at 5-6. Both of the Government's arguments are persuasive.

The Government points out that Defendant's right to counsel under the Sixth Amendment, which is clearly attached in these proceedings, does not extend to "all future proceedings." Doc. 151 at 3 (internal quotation marks omitted) (quoting *McNeil v. Wisconsin*, 501 U.S. 171,

14

175 (1991)). As the Supreme Court succinctly explained, "[t]he Sixth Amendment right . . . is offense specific." *McNeil*, 501 U.S. at 175. Thus, the attachment of a defendant's Sixth Amendment right as to a particular offense will not preclude his waiver of that right as to other offenses. *See id.* at 175-76. As the Court explained elsewhere, "to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities . . . ." *Maine v. Moulton*, 474 U.S. 159, 180 (1985). Finally, as the Government points out, the fact that the interview occurred in the investigation of crimes under Mississippi law, it is clearly beyond dispute that they are distinct from the instant charges, for Sixth Amendment purposes. *See* doc. 151 at 3 (quoting *United States v. Burgest*, 519 F.3d 1307, 1310 (11th Cir. 2008) ("We hold that where conduct violates laws of separate sovereigns, the offenses are distinct for purposes of the Sixth Amendment right to

counsel."). The interview, therefore, does not implicate Defendant's Sixth Amendment rights in this case.[3]

Even if Defendant's Sixth Amendment rights were not violated by the uncounselled interview, the admissibility of his statements requires the Court to determine whether they were voluntary.[4] *See, e.g., Jackson*, 378 U.S. at 380 ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably

---

[3] At the hearing on April 11, Defendant's counsel suggested that he questioned whether counsel might have been appointed in the Mississippi prosecution. The Government responded that, at the time of the interview, Defendant had not yet been indicted in Mississippi and there was no other indication that counsel had been appointed. In the absence of any affirmative allegation that Defendant had an attorney in the Mississippi prosecution, the Court cannot conclude that the conduct of the interview violated his right to counsel. The apparent lack of any such violation is supported by Defendant's express waiver of his right to counsel, discussed below.

[4] At the hearing, Defendant's counsel suggested that Defendant's rights under the Confrontation Clause of the Sixth Amendment were implicated by the fact that the Government had not called any witness in discharge of its burden to show that the statements were voluntary. That argument is not clearly presented in Defendant's Motion. *See generally* doc. 133. The Court is also unable to determine its precise force from counsel's brief reference at the hearing. By its terms, the Sixth Amendment guarantees a defendant's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. It is not clear that the officer who conducted the interview is a "witness against" Defendant, for purposes of establishing whether Defendant's own statements were voluntary. There is relatively clear authority that the Confrontation Clause does not apply in pretrial proceedings, for example suppression hearings. *See, e.g., United States v. Lattimore*, 525 F. Supp. 3d 142, 146-149 (D.D.C. 2021). In the absence of a clearer assertion of the argument, the Court proceeds to evaluate the evidence before it to determine whether Defendant's statements were voluntary.

16

determined.") "The Fifth Amendment provides to every person a right against self-incrimination, U.S. Const. amend. V, and, correspondingly, requires that trial courts exclude from evidence any incriminating statements an individual makes before being warned of his rights to remain silent and to obtain counsel." *United States v. Luna-Encinas*, 603 F.3d 876, 880 (11th Cir. 2010); *see also, e.g., United States v. Woodson*, 30 F.4th 1295, 1303 (11th Cir. 2022). Entitlement to *Miranda* warnings attaches "when custodial interrogation begins." *Luna-Encinas*, 603 F.3d at 880 (quoting *United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004)) (quotation marks omitted). The Government does not dispute, and the video recording of the interview confirms, that Defendant was in custody. *See generally* doc. 151.

Statements made during a custodial interrogation are inadmissible unless the Government establishes that the defendant "in fact knowingly and voluntarily waived [his] *Miranda* rights when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (internal quotation marks, alteration, and citation omitted). "The waiver inquiry has two distinct dimensions: waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than

17

intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 382-83 (internal quotation marks and citation omitted); *see also, e.g., Moran v. Burbine*, 475 U.S. 412, 421 (1986) (same). However, the Supreme Court has clarified that "coercion," in this context does not exist "whenever the defendant feels compelled to waive his rights by reason of any compulsion, even if [it] does not flow from the police." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986). "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." *Id.*

As the Government's Motion points out, and the video confirms, the officer read Robinson his *Miranda* rights before any questioning and Robinson waived those rights verbally and in writing. *See* doc. 151 at 5. The Government bears the burden of showing waiver or the application of an exception. *See United States v. Lall*, 607 F.3d 1277, 1282 (11th Cir. 2010); *United States v. Chaidez-Reyes*, 996 F. Supp. 2d 1321, 1345 (N.D. Ga. 2014). "Waiver [of *Miranda* rights] may be explicit or implicit, and a voluntary statement after hearing and understanding one's *Miranda*

18

rights constitutes a course of conduct indicating waiver sufficient to render subsequent statements admissible." *United States v. Roberson*, 573 F. Supp. 3d 209, 237 (D.D.C. 2021) (quoting *Berghuis*, 560 U.S. at 386) (internal quotation marks omitted). There is no indication that Robinson's waiver or subsequent statements were, in any way, involuntary in the sense that they were the product of "intimidation, coercion or deception." [5] *Connelly*, 479 U.S. at 170. The Court's focus, therefore, is on the evidence concerning Robinson's understanding of his rights.

Robinson refers, vaguely, to the fact that he "suffered a previous traumatic brain injury." Doc. 133 at 2. However, mental impairment, standing alone, does not preclude a valid waiver of *Miranda* rights. *See, e.g., United States v. Outland*, 73 F.4th 482, 487 (7th Cir. 2023) ("[N]either intoxication nor an impaired mental state necessarily renders a *Miranda* waiver invalid."). It is not enough to merely show the

---

[5] The video recording establishes that the officer took no action even approaching "coercive conduct," in the relevant sense. *See United States v. Thompson*, 422 F.3d 1285, 1295-96 (11th Cir. 2005) ("Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." (internal quotation marks and citation omitted)).

existence of some mental impairment, "[i]nstead the record must establish that, due to a mental disorder . . . , the defendant was *in fact* unable to comprehend and effectively waive his rights." *United States v. Quinones*, 2012 WL 2064705, at *3 (S.D. Ga. May 22, 2012). "Assessments of a defendant's coherence are regularly weighed in inquiries into the validity of *Miranda* waivers." *Outland*, 73 F.4th at 487-88 (citations omitted). Throughout the video recording, Robinson appears coherent. He appears oriented and alert and responds appropriately to the officers' questions. To the extent that his statements provide any evidence of mental impairment, they do not overcome the preponderance of the evidence that his explicit waiver was knowing and voluntary. Defendant's Motion to exclude those statements is **DENIED**. Doc. 133.

    **SO ORDERED,** this 17th day of April, 2025.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA